UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| EBEN BARRA, | CIVIL ACTION |
| Plaintiff | |
| VERSUS | NO. 19-13235 |
| RAYBORN TRUCKING, ET AL., | SECTION: "E"(3) |
| Defendants | |

## ORDER AND REASONS

Before the Court is a motion to remand filed by Plaintiff Eben Barra.[1] Defendants filed an opposition to the motion.[2] For the following reasons, Plaintiff's motion to remand is **GRANTED**.

## BACKGROUND

This case arises out of an automobile accident that occurred on August 21, 2017, in Orleans Parish, Louisiana.[3] On that date, Plaintiff claims a truck struck his car while he was driving on Old Gentilly Road.[4] The truck was operated by Defendant Kenneth Downs, owned by Defendants Mary Rayborn and Rayborn Trucking, and insured by Defendant Canal Insurance Co.[5] On August 2, 2018, Plaintiff filed suit against Defendants in the Civil District Court for the Parish of Orleans.[6]

In his state-court petition for damages, Plaintiff alleged that, as a result of this accident, he suffered "severe and debilitating injuries."[7] Plaintiff sought damages for pain and suffering, lost wages, medical expenses, and all other damages.[8] Plaintiff alleged, in

---

[1] R. Doc. 6.
[2] R. Doc. 9.
[3] R. Doc. 1-2, at 2.
[4] *Id.*
[5] *Id.* at 2–4.
[6] *Id.* at 1.
[7] *Id.* at 2.
[8] *Id.* at 4.

1

an unverified petition, these damages did not exceed $75,000,[9] but he did not execute a binding declaration that the damages were under $75,000, as would be necessary to definitively preclude federal jurisdiction.[10] After Plaintiff initiated this suit, Defendants propounded interrogatories and requests for production to Plaintiff.[11] On February 27, 2019, Plaintiff provided answers to Defendants' interrogatories and requests for production,[12] and in response to Defendants' requests for production, Plaintiff produced, among other things, his medical bills and records related to the injuries he allegedly sustained in the accident.[13]

Plaintiff was interviewed by a life care planner on February 19, 2019.[14] Counsel for Plaintiff represents that, between August 23 and 27, 2019, Plaintiff received the report dated August 23, 2019, recommending a Life Care Plan (the "Plan") totaling $957,642.72 for treatment of the injuries Plaintiff allegedly sustained as a result of the accident.[15] On September 23, 2019, one month after Plaintiff received the Plan, Plaintiff produced the Plan to Defendants.[16] On October 23, 2019, Defendants removed the case to this Court based on diversity.[17] On November 20, 2019, Plaintiff filed the instant motion to remand.[18]

---

[9] *Id.*
[10] *Printworks, Inc. v. Dorn Co.*, 869 F. Supp. 436, 440 (E.D. La. 1994) (holding that if the affidavits, affirmations, or statements of the party who seeks remand fall short of stipulating that the claimant will not seek more than the jurisdictional amount, jurisdiction must be assessed with reference to all the evidence.).
[11] R. Doc. 1-3, at 1–12.
[12] *Id.* at 13–25.
[13] *Id.* at 25–26. The notice of removal included Plaintiff's answers to interrogatories and responses to requests for production but did not include the medical records and bills referenced therein. Defendant has provided those documents, and the Court has attached them to the notice of removal as R. Doc. 1-6.
[14] R. Doc. 1-5 at 2. Two people signed the life care plan, and it is not clear which one conducted the interview.
[15] R. Doc. 6-1 at 5.
[16] R. Doc. 1-5, at 1.
[17] R. Doc. 1.
[18] R. Doc. 6.

## **LEGAL STANDARD**

Federal courts are courts of limited jurisdiction and possess only the authority conferred upon them by the United States Constitution or by Congress.[19] Federal law allows for state civil suits to be removed to federal courts in certain instances. Generally, removal jurisdiction is governed by 28 U.S.C. § 1441(a), which provides:

> Except as otherwise expressly provided by [an] Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.[20]

"The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."[21] When removal is based on federal diversity jurisdiction, the removing party must show that (1) complete diversity of citizenship exists between the parties, and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs[22] "The jurisdictional facts supporting removal are examined as of the time of removal."[23] "Ambiguities are construed against removal and in favor of remand because statutes allowing removal are to be strictly construed."[24]

The Fifth Circuit has "established a clear analytical framework for resolving disputes concerning the amount in controversy for actions removed from Louisiana state courts pursuant to 1332(a)(1)."[25] Because Louisiana law prohibits state-court plaintiffs

---

[19] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).
[20] 28 U.S.C. § 1441(a).
[21] *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[22] *Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) (citing *St. Paul Reinsurance Co. v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).
[23] *Poche v. Eagle, Inc.*, No. 15-5436, 2015 WL 7015575, at *2 (E.D. La. Nov. 10, 2015) (citing *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000)).
[24] *Id.* (citing *Manguno*, 276 F.3d at 723).
[25] *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000) (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)); *see also Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

from claiming a specific amount of damages,[26] the removing defendant must establish by a preponderance of the evidence that the amount in controversy exceeds the $75,000.00 jurisdictional amount at the time of removal.[27] The removing defendant may meet its burden in one of two ways, either (1) by demonstrating that it was "facially apparent" from the allegations of the state court petition that the amount in controversy exceeded the $75,000.00 jurisdictional threshold, or (2) by offering "summary-judgment type evidence" of facts in controversy, which support a finding that the requisite amount is in controversy.[28]

Even if the removing defendant meets its burden in either of these ways, a plaintiff can defeat removal by showing, to a legal certainty, that its recovery will be less than $75,000.00.[29] A plaintiff's post-removal affidavit or stipulation offered for this purpose may be considered in limited circumstances. If the amount in controversy is not facially apparent from the allegations in the state court petition and, in fact, is ambiguous at the time of removal, the court may consider a post-removal affidavit or stipulation to assess the amount in controversy as of the date of removal.[30] If, on the other hand, the amount in controversy is clear from the face of the state court petition, post-removal affidavits or

---

[26] *See* LA. CODE CIV. PROC. Art. 893.
[27] *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999); *Luckett*, 171 F.3d at 298.
[28] *White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003); *see also Simon*, 193 F.3d at 850; *Luckett*, 171 F.3d at 298.
[29] *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411-12 (5th Cir. 1995); *see also Sterns v. Scottsdale Ins. Co.*, No. 09-6449, 2010 WL 2733771, at *3 (E.D. La. July 8, 2010).
[30] *Gebbia*, 233 F.3d 880, 883 (5th Cir. 2000); *Associacion Nacional de Pescadores v. Dow Quimica de Columbia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993) (When the affidavit "clarify[ies] a petition that previously left the jurisdictional question ambiguous," the court may consider the affidavit in determining whether remand is proper.). *See also Cummings v. Winn-Dixie Montgomery, LLC*, No. 15-195-SDD-RLB, 2015 WL 4772185 (M.D. La. Aug. 12, 2015); *Nelson v. Nationwide Mut. Ins. Co.*, 192 F. Supp. 2d 617, 619 (E.D. La. 2001) ("[I]f it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction.").

stipulations that purport to reduce the amount of damages a plaintiff seeks cannot deprive the court of jurisdiction.[31]

In this case, the parties agree they are completely diverse, and it is now clear the amount in controversy exceeds $75,000 dollars. The parties disagree, however, as to whether Defendants' notice of removal was timely.

## **LAW AND ANALYSIS**

The timeliness of removal is generally governed by 28 U.S.C. § 1446(b), which provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. . . .
>
> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

In short, a defendant must file a notice of removal within 30 days of receiving the initial complaint,[32] or, "if the case stated by the initial pleading is not removable," within 30 days of receiving a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is removable.[33]

In any event, pursuant to § 1446(c)(1), a defendant may not remove a case if it has been more than one year since the suit commenced, unless the defendant shows the

---

[31] *Gebbia*, 233 F.3d at 883.
[32] 28 U.S.C. § 1446(b)(1).
[33] 28 U.S.C. § 1446(b)(3).

plaintiff acted in bad faith to prevent removal.[34] Section 1446(c)(1) provides: "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." "This rule is commonly called the 'one-year bar.'"[35]

In this case, Defendants admit they removed this case more than one-year after the suit was filed in state court,[36] but they contend the notice of removal is timely on two bases: first, because they filed it within thirty days of receiving the Plan—which they argue is the paper that first made them aware the amount in controversy exceeded $75,000— and second, because Plaintiff's failure to disclose the Plan until after the one-year time period for removal was in bad faith.[37] Plaintiff asserts Defendants' notice of removal is

---

[34] 28 U.S.C. § 1446(c)(1).
[35] *See Bennett v. United Rentals (N. Am.), Inc.*, No. 3:19-CV-00270, 2019 WL 5293544, at *3 (S.D. Tex. Oct. 18, 2019) (citing *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 426 n.8 (5th Cir. 2003)).
[36] Plaintiff filed his state-court suit on August 2, 2018. R. Doc. 1-2. Under § 1446(c), Defendant had until August 2, 2019, to file a notice of removal. Defendant did not file his notice of removal until October 23, 2019, eleven weeks after the one-year bar passed. R. Doc. 1.
[37] Another question that might be asked is whether the Defendants were required to remove the case within thirty days of receiving the Plaintiff's discovery responses on February 27, 2019 because these responses provided notice to Defendants that the amount in controversy exceeded $75,000 and the case was removable. For example, in response to requests for production numbers one and two, Plaintiff produced his medical bill from Total Health Clinic, where he was treated by doctors Cossé and Rose, totaling $8,398.00. R. Doc. 1-6, at 46. Plaintiff also produced his records from Cypress Pointe Pain Management, where he was treated by Dr. Domangue. Those records show Plaintiff underwent three procedures under Dr. Domangue's care: On August 15, 2018, Plaintiff underwent a bilateral lumbar rhizotomy, and on December 28, 2019, and January 11, 2019, he underwent bilateral lumbar transforaminal epidural steroid injections. *Id.* at 10, 21, 27. The records do not show the total costs of these procedures, including hospital charges, if any, but they do show Dr. Domangue's professional fee for the rhizotomy was $2,858.50 and his professional fee for the two steroid injections was $2,100. *Id.* at 5, 19. Lastly, in the records from Plaintiff's visit with Dr. Domangue on January 8, 2019, Dr. Domangue noted Plaintiff was still suffering some pain after the injections and that he discussed "continuing with prn injections/RFA to control symptoms as long as possible to delay surgery." *Id.* at 26.
    These answers to the interrogatories and requests for production showed Plaintiff had already spent at least $13,356.50 on treatment and had discussed with Dr. Domangue "continuing with prn injections/RFA to control symptoms as long as possible to delay surgery." *Id.* at 5, 19, 26, 46. In fact, Defendants may have been successful if they had removed this case at this time. Nevertheless, Plaintiff's answers did not specify any expenses exceeding $75,000 and, as a result, they did not make it "unequivocally clear and certain," the amount in controversy exceeded $75,000. *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) ("The information supporting removal in a copy of an amended pleading, motion, order or other paper must be 'unequivocally clear and certain' to start the time limit

untimely because Defendants filed it more than one year after Plaintiff initiated the state-court action, and Defendants failed to show Plaintiff engaged in any bad faith actions to prevent removal.

It is clear a case may not be removed under the thirty-day rule of subsection (b)(3) if more than one year has passed after commencement of the action.[38] As a result, Defendants, as the removing party, must rely on the Plaintiff's disclosure of the Plan after the one-year time period to show removal is proper based on Plaintiff's bad faith.[39]

In determining whether a plaintiff has acted in bad faith to prevent removal, "the question is what motivated the plaintiff *in the past*—that is, whether the plaintiff's litigation conduct was meant 'to prevent a defendant from removing the action.'"[40] In *Hoyt v. Lane Construction Corp.*, the Fifth Circuit affirmed a lower court's decision that the plaintiffs in that case acted in bad faith by dismissing a nondiverse defendant just two days after the one-year removal deadline expired and for doing so without receiving any consideration in return for the dismissal.[41] The record in *Hoyt* showed the plaintiffs knew the evidence would not support a claim against the nondiverse defendant, but they still "half-heartedly" pursued their claims against that defendant, waited until the one-year limit expired, and then dismissed the defendant "for free."[42] Because the plaintiffs failed to explain why the settlement and dismissal occurred just two days after the

---

running for a notice of removal under the second paragraph of section 1446(b)."). The Defendants were not required to remove the case within thirty days of receiving the responses to discovery requests.
[38] 28 U.S.C. § 1446(c)(1).
[39] *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."); *Jones v. Ramos Trinidad*, 380 F. Supp. 3d 516, 521 (E.D. La. 2019) ("[T]he burden of showing that plaintiffs acted in bad faith to prevent removal lies with the removing defendant.").
[40] *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 293 (5th Cir. 2019), *as revised* (Aug. 23, 2019) (citing 28 U.S.C. § 1446(c)(1)).
[41] *Id.* at 292.
[42] *Id.* at 292–93.

deadline expired, the Fifth Circuit found it was not clear error for the district court to conclude the plaintiffs acted in bad faith to prevent removal.[43]

In *National MGA Insurance Alliance, Inc. v. Illinois Mutual Life Insurance Co.*, a plaintiff increased the amount in controversy to more than $75,000 by adding a new cause of action to the complaint after the one-year bar had passed.[44] The District Court for the Western District of Texas distinguished this case from *Hoyt* and found there was no bad faith because the plaintiff's conduct occurred nearly two years after the commencement of the action, and ten months after the expiration of the one-year deadline.[45] The Court found this was not like "the suspicious timing in *Hoyt*," and instead "suggest[ed] something other than the one-year removal deadline motivated Plaintiff to amend.[46]

In this case, Defendants argue Plaintiff engaged in bad faith conduct by not disclosing his interview by the life care planner until after the one-year bar, even though the meeting occurred on February 19, 2019, almost six months before the one-year bar passed. To support this argument, Defendants point primarily to three of Plaintiff's February 27, 2019 answers to interrogatories.

Interrogatory number three asked Plaintiff to identify "all doctors, chiropractors, clinics, physical therapists, counselors, or other persons who have examined you or rendered medical or mental health treatment to you" relating to the accident.[47] Plaintiff responded by identifying his four doctors, but he did not include the names of the life care

---

[43] *Id.* at 293.
[44] No. SA-19-CV-00512-ESC, 2019 WL 6311376, at *3 (W.D. Tex. Nov. 25, 2019)
[45] *Id.*
[46] *Id.*
[47] R. Doc. 1-3, at 15–16.

8

planner.[48] The Court finds this was a correct and truthful response. The life care planner is not a doctor, chiropractor, clinic, physical therapist, counselor, or other person who examined Plaintiff or rendered medical or mental health treatment to him.[49]

Interrogatory number five asked Plaintiff to describe what further medical treatments he was contemplating or that had been recommended to him.[50] Plaintiff responded by disclosing that he did not have any surgery or interventional treatment currently scheduled but that he had a follow-up appointment scheduled with Dr. Domangue.[51] This was a truthful and forthcoming response. The life care planner did not, and was not qualified to, recommend treatment to the Plaintiff or provide treatment to him. In fact, the Plan states that, "This report is not for release to patient or family and is intended for professional use only."[52] It is clear the life care planner was not making treatment recommendations or scheduling appointments for the Plaintiff.

Interrogatory number sixteen asked Plaintiff to list any lay or expert witnesses he may call.[53] Plaintiff objected to this interrogatory as premature.[54] Plaintiff's objection was well founded. At the time Plaintiff answered the interrogatories, Plaintiff had not yet propounded discovery to Defendants, no depositions had been taken, the state court had not issued a scheduling order, and no motion for a scheduling conference had been filed.[55]

---

[48] *Id.*
[49] The Plan does include the notation "Date of Evaluation 02/19/2019," but there is no indication the life care planners actually did a physical examination of the Plaintiff as opposed to relying on Plaintiff's medical records. R. Doc. 1-5 at 2. The only narrative based on the interview focuses on the Plaintiff's recounting of the history of his medical problems and not a physical examination of the Plaintiff. In the final section of the report, the life care planners reference the "consultation," which is a more accurate representation of what apparently occurred.
[50] R. Doc. 1-3, at 16–17.
[51] *Id.* at 17.
[52] R. Doc. 1-5 at 5.
[53] R. Doc. 1-3, at 21.
[54] *Id.*
[55] R. Doc. 6-1, at 7. Defendants do not contest this description of the status of the state court litigation.

Under Louisiana law, the trial court, upon contradictory motion or on the Court's own motion, may enter an order requiring the disclosure of expert reports and setting the date and sequence of disclosure.[56] As Plaintiff puts it, objecting to an interrogatory like interrogatory number sixteen "is a standard, frequently used reply when posed with such a request or question, so early in the discovery process."[57] Defendants had not filed a contradictory motion asking the trial court to require the Plaintiff to provide all expert reports by a certain date. The Plaintiff was within his rights not to disclose that he had been interviewed by a life care planner at the time of the discovery responses.

Plaintiff was not untruthful or acting in bad faith with respect to any of his responses to discovery. The only other conduct Defendants believe shows bad faith is that Plaintiff received the Plan between August 23 and August 27, 2019 but did not provide it to the Defendants until September 23, 2019. The Court does not find anything suspicious about the timing of Plaintiff's disclosure similar to what the court found in *Hoyt*. Instead, as in *National MGA*, there was a significant gap—seven weeks in this case—between the one-year bar lapsing and Plaintiff disclosing the Plan. This weighs in favor of finding Plaintiff's actions were not in bad faith. Defendants have pointed to no other conduct by Plaintiff that would show bad faith effort meant to prevent removal.[58]

In this case, Defendants have not met their burden of showing that Plaintiff engaged in bad faith conduct meant to prevent removal. Accordingly, the Court will not

---

[56] LA. CODE CIV. PROC. art. 1425.
[57] R. Doc. 6-1, at 7.
[58] Defendants mention an alleged email in which Plaintiff's counsel failed to identify Plaintiff's evaluation by a life care planner. R. Doc. 1, at 4. Defendants did not provide Plaintiff's responsive email to the Court, nor is there any way Plaintiff could have informed defendant of the Life Care Plan estimation at the time of the email. Plaintiff did not receive the Life Care Plan until several weeks after this email was sent. Accordingly, the Court gives no weight to Defendants' unsupported statements regarding emails sent on July 30 or August 1, 2019.

apply the bad faith exception to the one-year bar set forth in § 1446(c), and the Court finds Defendants notice of removal was untimely.

## **CONCLUSION**

**IT IS ORDERED** that Plaintiff's motion to remand is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is hereby remanded to the Civil District Court for the Parish of Orleans, State of Louisiana.

**New Orleans, Louisiana, this 16th day of December, 2019.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**